**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VANESSA HARRELL,** | : | |
| | : | |
| Plaintiff, | : | Civil Action No. _______ |
| v. | : | |
| **STARBUCKS CORPORATION,** | : | |
| | : | |
| Defendant. | : | |

# COMPLAINT

Plaintiff Vanessa Harrell, by and through undersigned counsel, brings this Complaint against Defendant Starbucks Corporation and alleges as follows:

## I. INTRODUCTION

1. This is an employment discrimination and retaliation action arising from Defendant Starbucks Corporation's treatment and termination of Plaintiff Vanessa Harrell after she disclosed her pregnancy, requested pregnancy-related accommodations, and complained of pregnancy discrimination.

2. Plaintiff was employed by Starbucks as a Barista at its store located at 1510 Sullivan Trail, Easton, Pennsylvania 18040, from December 11, 2023, until her termination on April 23, 2025.

3. After Plaintiff informed Starbucks management that she was pregnant and would need a medical accommodation, Starbucks removed her from the schedule, reduced her work hours, and later terminated her employment.

4. On April 23, 2025, Plaintiff complained to Starbucks District Manager Krista Dilworth about pregnancy discrimination and was terminated hours later.

5. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, and under the Pennsylvania Human Relations Act.

## II. PARTIES

6. Plaintiff Vanessa Harrell is an adult individual residing in Pennsylvania. Plaintiff's EEOC charge identifies her as Vanessa Harrell, residing in East Stroudsburg, Pennsylvania.

7. Defendant Starbucks Corporation is a corporation that employed Plaintiff. Plaintiff's EEOC charge identifies Starbucks Corporation as the employer, with 500+ employees and a corporate address at 2401 Utah Avenue, Seattle, Washington 98134.

8. At all relevant times, Defendant was an employer within the meaning of Title VII and the PHRA.

9. At all relevant times, Defendant acted through its agents, employees, supervisors, managers, human resources personnel, and representatives.

## III. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over Plaintiff's federal claims because this action arises under federal employment discrimination law, including Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

11. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under the Pennsylvania Human Relations Act because those claims arise from the same facts, employment relationship, adverse actions, and termination at issue in Plaintiff's federal claims.

12. Venue is proper in this District because the events giving rise to Plaintiff's claims occurred in this District. Plaintiff worked for Starbucks at 1510 Sullivan Trail, Easton, Pennsylvania 18040.

13. Plaintiff dual-filed her EEOC Charge of Discrimination and PHRC complaint on June 4, 2025.

14. The PHRC notice identifies the matter as Vanessa Harrell v. Starbucks Corporation, PHRC Case No. 202500597 and EEOC Case No. 530-2025-06741, and states that the EEOC charge was also filed with the PHRC.

15. More than one year has passed since Plaintiff dual filed her Charge of Discrimination with the EEOC and the PHRC. Plaintiff exhausted her administrative remedies. The EEOC granted Plaintiff the right to sue on October 9, 2026.

## IV. FACTUAL ALLEGATIONS

16. Plaintiff began working for Starbucks on December 11, 2023.

17. Plaintiff worked at Starbucks' store located at 1510 Sullivan Trail, Easton, Pennsylvania 18040.

18. In February 2025, Plaintiff informed her manager, Ashley Hulsizer, that she was pregnant.

19. On March 25, 2025, Plaintiff initiated a maternity leave claim through Sedgwick, Starbucks ' third-party administrator.

20. On March 28, 2025, following a management change, Plaintiff notified her new manager, Madilyn Whitehead, in the presence of Ashley Hulsizer that she was pregnant and indicated that she would need to request an accommodation.

21. On April 1, 2025, Starbucks released the work schedule for the week of April 7 through April 20, 2025, and Plaintiff was not included on the schedule.

22. Plaintiff's last shift as a supervisor was on April 4, 2025, and starting the week of April 7, 2025, she returned to the position of barista.

23. Although Plaintiff was not on the schedule, she picked up a few shifts from coworkers.

24. On April 10, 2025, Plaintiff submitted her request for medical accommodations online.

25. Plaintiff's medical documentation stated that she could work three days per week and could not lift heavy objects.

26. Plaintiff was scheduled to work at 4:00 p.m. on April 23, 2025.

27. Before going to work on April 23, 2025, Plaintiff contacted District Manager Krista Dilworth to report pregnancy discrimination.

28. Plaintiff spoke with Ms. Dilworth at 9:57 a.m. and told her that she believed she was being discriminated against because her hours had been cut without explanation after she informed Ms. Whitehead that she was pregnant.

29. Ms. Dilworth agreed that she was confused as to why Ms. Whitehead was not scheduling Plaintiff for more shifts.

30. Plaintiff also told Ms. Dilworth that Ms. Whitehead had hired two baristas a few days after learning Plaintiff was pregnant and would need an accommodation.

31. On April 23, 2025, Plaintiff spoke with Jen Churchill in Human Resources/Partner Relations at 1:00 p.m. for approximately 10 minutes to finalize her medical accommodation.

32. During that call, Ms. Churchill asked Plaintiff two questions regarding her break times.

33. At 2:30 p.m., Ms. Churchill emailed Plaintiff, Ms. Whitehead, and District Manager Krista Dilworth approving Plaintiff's accommodation request.

34. Hours after Plaintiff's accommodation was approved and after Plaintiff complained of discrimination, Starbucks terminated her employment.

35. Starbucks' Notice of Separation to Plaintiff states that the notice was delivered on April 23, 2025.

36. The stated reason for Plaintiff's termination was that she allegedly issued fraudulent refunds to customers, and Plaintiff had no prior knowledge of that allegation.

37. Starbucks' Notice of Separation states that the separation related to alleged fraudulent returns and alleges that Plaintiff completed "no less" than seven fraudulent returns, returning funds directly to her Starbucks account.

38. On April 23, 2025, Starbucks presented Plaintiff with a Partner Restitution Agreement stating that she would repay $110.32.

39. Plaintiff denies that Defendant's stated reason was the true reason for her termination.

40. The timing of Defendant's actions included Plaintiff being removed from the schedule after disclosing her pregnancy and need for accommodation, and being terminated the same day she complained about pregnancy discrimination and received approval for pregnancy-related accommodations.

41. Plaintiff contends that the stated reason for termination was pretextual given the timing, Plaintiff's lack of prior knowledge of the allegation, and her position that she did not issue fraudulent refunds to customers.

42. As a result of Defendant's actions, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, inconvenience, damage to her career, and other damages.

**COUNT I**

**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 1991, 42 U.S.C. § 2000, *et seq*. and THE PENNSYLVANIA HUMAN RELATIONS ACT 43.P.S. § 951 et seq., AS AMENDED 1991.**

**(Pregnancy Discrimination)**

43. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

44. Plaintiff was pregnant during the relevant period.

45. Defendant knew Plaintiff was pregnant. Plaintiff informed Ashley Hulsizer in February 2025 that she was pregnant, and informed Madilyn Whitehead on March 28, 2025 that she was pregnant and would need an accommodation.

46. Plaintiff was qualified for her position and was performing work for Defendant.

47. Defendant subjected Plaintiff to adverse employment actions, including removal from the schedule, reduction of hours, and termination.

48. Defendant removed Plaintiff from the April 7 through April 20, 2025 schedule and terminated her on April 23, 2025.

49. Defendant's actions occurred under circumstances supporting an inference of pregnancy discrimination.

50. Plaintiff was removed from the schedule after disclosing her pregnancy and need for accommodation, and she was terminated the same day she received approval for pregnancy-related accommodations.

51. Defendant discriminated against Plaintiff because of pregnancy, childbirth, or related medical conditions.

52. Defendant's stated reason for Plaintiff's termination was pretextual.

53. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

54. Plaintiff is entitled to all remedies available under Title VII of the Civil Rights Act of 1964, as amended 1991, 42 U.S.C. § 2000, *et seq*., including but not limited to back pay, front pay or reinstatement, compensatory damages, punitive damages, attorneys' fees, costs, interest, and such further relief as the Court deems just and proper.

55. Plaintiff is entitled to all remedies available under the Pennsylvania Human Relations Act 43 P.S. § 951 et seq., as Amended 1991, including but not limited to back pay, front pay or reinstatement, compensatory damages, attorneys' fees, costs, interest, and such further relief as the Court deems just and proper.

**COUNT II**

**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 1991, 42 U.S.C. § 2000, *et seq*. and THE PENNSYLVANIA HUMAN RELATIONS ACT 43.P.S. § 951 et seq., AS AMENDED 1991.**

**(Retaliation)**

56. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

57. Plaintiff engaged in protected activity when she complained to Defendant about pregnancy discrimination.

58. On April 23, 2025, Plaintiff contacted District Manager Krista Dilworth and reported that she believed she was being discriminated against because her hours had been cut after she informed Ms. Whitehead that she was pregnant.

59. Starbucks admitted that Plaintiff contacted Ms. Dilworth on April 23, 2025, complained about the schedule, and expressed concerns regarding potential discrimination.

60. Defendant knew Plaintiff engaged in protected activity.

61. Defendant took materially adverse action against Plaintiff by terminating her employment.

62. Defendant terminated Plaintiff hours after her accommodation was approved and after she complained of discrimination.

63. The close temporal proximity between Plaintiff's protected activity and her termination supports an inference of retaliation.

64. Defendant's stated reason for termination was pretextual.

65. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered damages.

66. Plaintiff is entitled to all remedies available under Title VII of the Civil Rights Act of 1964, as amended 1991, 42 U.S.C. § 2000, *et seq*., including but not limited to back pay, front pay or reinstatement, compensatory damages, punitive damages, attorneys' fees, costs, interest, and such further relief as the Court deems just and proper.

67. Plaintiff is entitled to all remedies available under the Pennsylvania Human Relations Act 43 P.S. § 951 et seq., as Amended 1991, including but not limited to back pay, front pay or reinstatement, compensatory damages, attorneys' fees, costs, interest, and such further relief as the Court deems just and proper.

**COUNT III**

**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 1991, Pregnant Workers Fairness Act, 42 U.S.C. §§ 2000gg et seq.**

68. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

69. At all relevant times, Defendant Starbucks Corporation was Plaintiff's employer within the meaning of the Pregnant Workers Fairness Act.

70. Plaintiff was a qualified employee within the meaning of the Pregnant Workers Fairness Act.

71. On March 28, 2025, following a management change, Plaintiff notified her new manager, Madilyn Whitehead, that she was pregnant and would need to request an accommodation.

72. Plaintiff had known limitations related to pregnancy, childbirth, or related medical conditions, including restrictions on her work schedule and lifting.

73. On April 10, 2025, Plaintiff submitted a request for medical accommodations online, and her documentation stated that she could work three days per week and was unable to lift heavy objects.

74. Defendant was required to make reasonable accommodations for Plaintiff's known pregnancy-related limitations unless Defendant could demonstrate that doing so would impose an undue hardship.

75. Defendant was also required to engage in a timely, good-faith interactive process with Plaintiff regarding her need for pregnancy-related accommodations.

76. Rather than reasonably accommodating Plaintiff's pregnancy-related limitations, Defendant materially reduced Plaintiff's work opportunities after learning of her pregnancy and need for accommodation.

77. On April 23, 2025, Plaintiff spoke with Jen Churchill in Human Resources at approximately 1:00 p.m. to finalize her medical accommodation, and at approximately 2:30 p.m. Ms. Churchill emailed Plaintiff, her manager, and the District Manager approving Plaintiff's accommodation request.

78. Hours after Plaintiff's accommodation was approved, Defendant terminated Plaintiff's employment.

79. Defendant's conduct violated the Pregnant Workers Fairness Act by, among other things, failing to reasonably accommodate Plaintiff's known pregnancy-related limitations, reducing Plaintiff's hours and work opportunities because of her need for accommodation, and terminating Plaintiff's employment because she requested and obtained pregnancy-related accommodations.

80. Defendant's stated reason for terminating Plaintiff was pretextual.

81. As a direct and proximate result of Defendant's violations of the Pregnant Workers Fairness Act, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, embarrassment, inconvenience, and other compensable damages.

82. Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

83. Plaintiff is entitled to all remedies available under the Pregnant Workers Fairness Act, including but not limited to back pay, front pay or reinstatement, compensatory damages, punitive damages, attorneys' fees, costs, interest, and such further relief as the Court deems just and proper.

**VI. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Vanessa Harrell respectfully requests that this Court enter judgment in her favor and against Defendant Starbucks Corporation and award the following relief:

a. Judgment that Defendant violated Plaintiff's rights under Federal and Pennsylvania law;

b. Back pay, lost wages, lost benefits, and all other economic damages;

c. Front pay;

d. Compensatory damages for emotional distress, humiliation, embarrassment, inconvenience, and other non-economic harm;

e. Punitive damages to the extent available under applicable federal law;

f. Pre-judgment and post-judgment interest;

g. Reasonable attorneys' fees and costs; and

h. Such other and further relief as the Court deems just and proper.

**VII. JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

**HARDWICK BENFER, LLC**

/s/*Tiffanie C. Benfer*

Tiffanie C. Benfer, Esq.
2003 S. Easton Road, Suite 308
Doylestown, PA 18901
Telephone: (215) 230-1912
Email:tbenfer@hardwickbenfer.com

Attorney for Plaintiff Vanessa Harrell

Date: October 15, 2026